David M. deRubertis, State Bar No. 208709
  E-mail: David@deRubertisLaw.com
Garen R. Nadir, State Bar No. 285394
  E-mail: Garen@deRubertisLaw.com
**The deRubertis Law Firm, APC**
4219 Coldwater Canyon Avenue
Studio City, California 91604
Telephone:  (818) 761-2322
Facsimile:   (818) 761-2323

Alan I. Schimmel, State Bar No. 101328
  E-mail: AISchimmerl@spattorneys.com
Michael W. Parks, State Bar No. 154531
  E-mail: MWParks@spattorneys.com
Arya Rhodes, State Bar No. 299390
  E-mail: ARhodes@spattorneys.com
**Schimmel & Parks, APLC**
15303 Ventura Blvd., Suite 650
Sherman Oaks, California 91403
Telephone:  (818) 464-5061
Facsimile:   (818) 464-5091

Attorneys for Plaintiff
Monique Hicks

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE HICKS, an individual,<br><br>         Plaintiff,<br><br>         v.<br><br>NETFLIX, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>         Defendant(s). | Case No.: 2:19-cv-10452-AB-MAA<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT NETFLIX, INC.'S MOTION TO DISMISS**<br><br>Judge: Hon. André Birotte Jr.<br><br>Hearing:    February 28, 2020<br>Time:        10:00 AM<br>Location:   Courtroom 7B<br><br>Complaint Filed:  November 14, 2019<br>Trial Date:            None Set |

**OPPOSITION TO DEF. NETFLIX'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS………..……………………………………...…..…..…..i

TABLE OF AUTHORITIES..……………….....………………………..…...……....ii

I.    INTRODUCTION…………………………………...…..……………..1

II.    SUMMARY OF FACTS MATERIAL TO THIS MOTION…………….....2

ARGUMENT……………………………………………………………..…6

I.    THE STANDARD ON A MOTION TO DISMISS…..……………....……..6

II.    RETALIATION (5TH AND 8TH CLAIMS FOR RELIEF): THE COMPLAINT PROPERLY STATES RETALIATION CLAIMS. TO ARGUE OTHERWISE, NETFLIX IS REDUCED TO READING THE COMPLAINT'S ALLEGATIONS WITH BLINDERS AND TWISTING OR IGNORING CLEARLY PLEAD FACTUAL ALLEGATIONS……………………………………..7

III.    FAILURE TO PREVENT RETALIATION (6TH CLAIM FOR RELIEF): NETFLIX'S ATTACK ON THE FAILURE TO PREVENT CLAIM IS DERIVATIVE OF ITS ATTACK ON THE FEHA RETALIATION CLAIM. THUS, THE TWO CHALLENGES RISE AND FALL TOGETHER…………………………..10

IV.    UNRUH CIVIL RIGHTS ACT (9TH CLAIM FOR RELIEF): PLAINTIFF IS ENTITLED TO PLEAD ALTERNATIVE THEORIES. THUS, THE FACT THAT IN SOME CLAIMS PLAINTIFF ALLEGES AN EMPLOYMENT RELATIONSHIP DOES NOT PROVIDE ANY BASIS TO DISMISS THE UNRUH CLAIM…………………………………………………………11

V.    PLAINTIFF REQUESTS LEAVE TO AMEND IF ANY CLAIM IS DISMISSED BY THIS MOTION…………………………………..12

# TABLE OF AUTHORITIES

***Federal Cases***                                                                                           ***Pages(s)***

*Ashcroft v. Iqbal* (2009)
556 U.S. 662……………………………..……………………………………………..6

*Bell Atlantic Corp. v. Twombly* (2007)
550 U.S. 544…………………………………………………………………..……..6

*Brown v. Contra Costa Cty.* (N.D. Cal. Apr. 3, 2014)
2014 WL 1347680, at *6………………………………………………………………7

*Erickson v. Pardus* (2007)
551 U.S. 89……………………………………………………...……………...6

*Hernandez v. MidPen Housing Corp.* (N.D. Cal., May 16, 2014)
2014 WL 2040144, at *6……………………………………………….…………..11

*Industrial Orgs. v. City f Miami, Fl.* (11th Cir. 2011)
637 F.3d 1178…………………………………………………………………..6

*McDonnell Douglas Corp. v. Green* (1973)
411 U.S. 792………………………………………………………………………..6

*McNamara v. Picken* (D. D.C. 2013)
950 F. Supp.2d 125………………………………………………………………..11

*Swierkiewiz v. Sorema, N.A.* (2002)
534 U.S. 506…………………………………………………………...………….6

*Wi-LAN Inc. v. LG Electronics, Inc.* (S.D. Cal. 2019)
382 F.Supp.3d 1012…………………………..…………………………………11

***California Cases***                                                                                        ***Pages(s)***

*Alamo v. Practice Management Info. Corp.* (2013)
219 Cal.App.4th 466…………………………………………………………….7

*Harris v. City of Santa Monica* (2013)
56 Cal.4th 203……………………………………………..……………………7

# TABLE OF AUTHORITIES (Cont.)

***California Cases (Cont.)***                                                                 ***Pages(s)***

*Kotla v. Regents of University of California* (2004)
115 Cal.App.4th 283……………………………………..…………………….10

*Yanowitz v. L'Oreal USA, Inc.*(2005)
36 Cal.4th 1028…………………………………………………………………….7


***Statutes***                                                                                          ***Page(s)***

United States Code

    42 U.S.C. §1981 …………………………………………………..…………7


Federal Rules of Civil Procedure

    Rule 8(a)(3)…………………………………………………………………….11


***Regulations***                                                                                        ***Page(s)***

California Code of Regulations

    2 Cal. Code Regs §11009(c)………………………………..………..…..7, 9

    2 Cal. Code Regs §11009(e)……………………………………..…..……..8

    2 Cal. Code Regs §11021(a)…………………………………..…………..9, 10


***Other Authorities***                                                                                   ***Page(s)***

Judicial Council of California Jury Instructions (July 2019 Ed.) (CACI)

    Instructions No. 2507……………………………...……………………………….8

## I. INTRODUCTION

This is a discrimination and retaliation case. Defendant Netflix (a leading steamer of online content) approached Oscar-winning actress and award-winning comedian Monique Hicks (Mo'Nique) with an offer to work in an original Netflix comedy special. Netflix's monetary offer to Mo'Nique was discriminatory: it perpetuated the massive pay gap experienced by Black women still to this day throughout America. Mo'Nique spoke up, engaging in legally-protected opposition, and she plead with Netflix to reconsider and renegotiate a fair, non-discriminatory offer. Netflix responded with retaliation: it refused to continue negotiations with her. This was not Netflix's normal practice. Its normal practice is to negotiate in good-faith if the talent is not satisfied with the initial offer. But Netflix denied Mo'Nique this same practice or employment benefit that it often extends to those who do not engage in legally-protected activity like Mo'Nique did. Indeed, when dealing with white males, white women and even Black women who did not protest that their initial offer was discriminatory, Netflix has negotiated beyond the initial offer reaching fair and non-discriminatory terms. But once Mo'Nique spoke-up through legally-protected opposition, Netflix shut down any negotiation, presented the offer as "take-it-or-leave-it" and refused to give Mo'Nique the benefit of continued negotiations that it has given others. These facts, alone, establish a plausible basis to conclude that Netflix is liable for retaliation under well-settled law.

Therefore, to argue that the retaliation claims should be dismissed, Netflix is reduced to ignoring the above well-pleaded allegations and, instead, reading the Complaint with blinders. Only by doing that can it argue that the Complaint fails to allege any request by Mo'Nique to reconsider or resume negotiations or any conduct by Netflix after Mo'Nique's protected activity occurred. But those are exactly the misplaced factual arguments underpinning this ill-conceived motion. Reading the Complaint for what it actually alleges, there is no basis to dismiss either of the

retaliation claims. Likewise, because Netflix's challenges to the failure to prevent claim are purely derivative of, and dependent on, its challenges to the FEHA retaliation claim, once the motion is denied as the FEHA retaliation claim it must also be denied as to the failure to prevent claim.

Finally, Nextflix makes another bogus argument to try to dismiss the Unruh Civil Rights Act claim. Citing case law that holds the Unruh Civil Rights Act does not apply to a true employment relationship, Netflix says this claim must be dismissed because the Complaint alleges the proposed relationship between Mo'Nique and Netflix was an employment relationship. This ignores the obvious: Netflix seems to intend to dispute that the relationship it offered Mo'Nique was an employment relationship governed by the FEHA and other employment laws.[1] Given this fact, Plaintiff pled the Unruh claim as an alternative legal theory in the event that Netflix were to prevail on its claim that the offer was not an offer of employment. The Complaint even expressly says that the claim is plead as an alternative in the event that the Court finds FEHA coverage did not apply to the proposed offer. Federal pleading practice plainly permits this type of alternative theory pleading and there is no basis to dismiss the Unruh claim on this ground (the sole ground raised in the motion).

## II. SUMMARY OF FACTS MATERIAL TO THIS MOTION

**The Background:** Defendant Netflix is the world's leading internet-based entertainment-streaming service that offers its members online streaming of a library of files and television programs, including those created in-house within Netflix. Complaint, ¶41. A component of Netflix's operations is producing its own original content, including movies, series and specials. *Id*. at ¶41.

---

[1] *See* D's MPA, 4: 27-28 at fn. 3: "Defendant assumes, but only for purposes of this motion, that Plaintiff was an employee or perspective (*sic*) employee entitled to FEHA's protections …."

Plaintiff Monique Hicks (hereafter, Mo'Nique) is an Oscar-winning actress who has had a successful career as both a stand-up comic and actress. *Id*. at ¶¶1, 46-60. In addition to her Oscar Award, Mo'Nique's accolades include awards and honors from the Screen Actors Guild, Sundance Film Festival, BET, NAACP, among many others. *Id*. at ¶¶48-59.

**Netflix recruit Mo'Nique:** In late-2017, Netflix executives attended one of Mo'Nique's live stand-up shows after which Netflix executives showered her with effusive praise. *Id*. at ¶61. Netflix informed Mo'Nique that it was considering making her an offer to work on a Netflix original stand-up program. *Ibid*. Netflix then began to recruit Mo'Nique in a series of events that culminated in it making Mo'Nique an offer. *Id*. at ¶¶61-65. At this time, Netflix was aggressively ramping-up its stand-up content and trying to dominate the market for original stand-up material. *Id*. at ¶62. Given her background and history of success, Mo'Nique was precisely the type of talent Netflix should have wanted: she had a proven track record of success in original stand-up content, had years of filling stand-up venues, was widely regarded as one of the leading Black female comedians of all time, etc. *Ibid*.

**Netflix makes an offer that Mo'Nique reasonably believes is discriminatory:** On January 11, 2018, after a series of conversations between Mo'Nique and her representatives and Netflix's representatives, Netflix made Mo'Nique an offer with monetary terms that she reasonably believed were discriminatory based on race and gender. *Id*. at ¶¶64, 66-68.

**Mo'Nique engages in legally-protected activity opposing the discriminatory offer, but Netflix refuses to continue negotiations or increase the offer:** After receiving the initial discriminatory offer, Mo'Nique objected and engaged in other legally-protected opposition. *Id*. at ¶69. Both personally and through her representatives, Mo'Nique pushed back on the terms of the offer, calling out Netflix for discriminating against Black women. *Id*. at ¶70.

1        Initially, with her explicit authorization and acting on her behalf, Mo'Nique's
2 representatives wrote Netflix's executives pleading that they reconsider the "racially
3 and gender biased offer" and noting that Mo'Nique was "blindsided" by it. *Id*. at
4 ¶71. Mo'Nique's representatives questioned "what makes Mo'Nique, who has been
5 labeled a living legend based on her awards from around the world, her tenure in the
6 game, and her diverse body of work … somehow … worth $12,500,000 less than
7 Amy Schumer to [Netflix]?" *Ibid*. Mo'Nique's representatives pointed out that her
8 Black male counterparts were even paid seven million dollars ($7,000,000.00) more
9 per show than Schumer, all of which drove home the point that it made no sense for
10 Mo'Nique to be offered only five hundred thousand dollars ($500,000.00) for
11 similar work. *Ibid.*
12        Initially, Netflix responded that it purportedly took "very seriously" the
13 concerns raised in the email. *Id*. at ¶72. It thus agreed to have a call with
14 Mo'Nique's representatives to discuss her concerns. *Ibid*.
15        On January 17, 2018, Mo'Nique's representatives had a call with, *inter alia*,
16 Robbie Praw (Netflix's Director – Original Stand-up Comedy Programming). *Id*. at
17 ¶73. In this call, like in the prior communications, Mo'Nique's representatives
18 asked how Netflix had arrived at its pay valuation for Mo'Nique compared to
19 others; Mo'Nique's representatives explained her concern that Mo'Nique viewed
20 the offer as discriminatory based on her race/color and gender. *Ibid*. In explaining
21 why the offer was so low in their view, Mo'Nique's representatives reviewed some
22 of her body of work and her history of success, only to be met with the claim that
23 Netflix does not look at "résumés" or "bodies of work" to arrive at pay offers;
24 rather, it claimed to use an "assumptive approach." *Ibid*. Yet, moments later, when
25 justifying paying Amy Schumer (a White woman) twenty-six (26) times more than
26 Mo'Nique for comparable work, Praw justified the disparity by citing the facts that
27 Schumer had sold out Madison Square Garden and had a recent movie released.
28 *Ibid*. Mo'Nique's representative replied that Netflix was citing Schumer's résumé

or "body of work" to justify her pay but at the same time claiming that it did not look at résumés or "bodies of work" and, therefore, it would refuse to look at Mo'Nique's to make a fair pay offer to her. *Ibid*. Pressed repeatedly, Praw stuck to Netflix's party line: Based on its "internal data," Netflix uses an "assumptive approach" or "anticipatory approach" and that the company "had a process and that's the way we do it," steadfastly refusing to negotiate reasonable terms or reconsider the lowball, discriminatory offer. *Ibid*.

At all times during these discussions, Netflix executives (including Praw) made clear that they had the highest respect for Mo'Nique and that they were well aware of her outstanding career. *Id*. at ¶74. In fact, during one discussion, Praw acknowledged "I want you to know I know Mo'Nique is a legend. She is." *Ibid*. Still, they stubbornly refused to make a fair and equitable pay offer to Mo'Nique. *Ibid*. Indeed, Netflix simply refused to engage in any negotiation and presented its offer on "take-it-or-leave-it" terms. *Id*. at ¶75.

Thereafter, Mo'Nique herself engaged in additional protected conduct. *Id*. at ¶76. Among other things, she personally spoke out publicly about the discriminatory offer and called for a boycott of Netflix, including raising the concern that if she did not speak up and out for pay equity for Black women, she would merely be perpetuating the pay equity gap for Black women rather than working to change the inequities for future generations. *Ibid*. In Mo'Nique's words: "I couldn't accept that low offer because if I did … I couldn't sleep at night. If I accepted $500,000, what does Tiffany Haddish have coming? If I accept that, what does the Black female comedian have coming? Because what they'll say is, 'Mo'Nique accepted this and she's got that.' So what do they have coming?" *Ibid*.

**By denying Mo'Nique continued negotiations or an increased offer after her protected activity, Netflix departed from its regular practice and treated Mo'Nique worse than others because of her protected conduct:** In contrast to how Netflix's responded to Mo'Nique's call for additional negotiations and an

increased offer, in other similar situations involving males and caucasions, Netflix has negotiated increased offers. *Id*. at ¶75. Moreover, Netflix's has even engaged in continued negotiations with increased offers (rather than a take-it-or-leave-it offer) with Black women who (unlike Mo'Nique) did not protest that their initial offers were discriminatory. *Id*. at ¶¶78-80.

## ARGUMENT

### I. THE STANDARD ON A MOTION TO DISMISS.

A plaintiff's pleading burden is merely to give the defendant "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Allegations of material fact must be assumed true and interpreted liberally in the light most favorable to the pleader. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The pleading burden is not heavy: the complaint need merely "contain enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory.'" *Industrial Orgs. v. City f Miami, Fl.*, 637 F.3d 1178, 1186 (11th Cir. 2011). In an employment discrimination case, like here, the plaintiff is not even required to state a prima facie case of liability in order to validly plead a claim. *Swierkiewiz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002); *see also Id*. at 508 ("We hold that an employment discrimination complaint need not include such facts [establishing a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)] and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.").

In terms of assessing whether the factual allegations support the claims for relief, the standard is simply that the claim must have facial plausibility: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, "plausibility" is

not "akin" to probability "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid*.

## II. RETALIATION (5TH AND 8TH CLAIMS FOR RELIEF): THE COMPLAINT PROPERLY STATES RETALIATION CLAIMS. TO ARGUE OTHERWISE, NETFLIX IS REDUCED TO READING THE COMPLAINT'S ALLEGATIONS WITH BLINDERS AND TWISTING OR IGNORING CLEARLY PLEAD FACTUAL ALLEGATIONS.

The parties agree on the basic elements – Plaintiff must establish that: (1) she engaged in legally-protected activity; (2) the employer subjected her to an adverse employment action; and (3) a causal link existed between the protected activity and the employer's actions. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042 (2005) (FEHA retaliation); *Brown v. Contra Costa Cty.*, 2014 WL 1347680, at *6 (N.D. Cal. Apr. 3, 2014) (same for retaliation under 42 U.S.C. §1981); *see also* D's MPA, 4:18-5:7. Netflix's sole challenge is to the third element – *i.e.*, whether the complaint adequately alleges the causal connection between Plaintiff's protected activity and any resulting adverse action. D's MPA, 4:21-22 ("…and – key to this motion – (3) a causal link existed between the protected activity and the employer's action.").

The causal nexus requirement is not a heavy burden. On the FEHA retaliation claim, the plaintiff need merely establish that the protected activity was a "substantial motivating reason" for the adverse employment action. *Harris v. City of Santa Monica*, 56 Cal.4th 203, 215-215 & 232 (2013) (discrimination "because of" protected trait means discriminatory animus was a "substantial motivating reason" for the challenged action); *see also Alamo v. Practice Management Info. Corp.*, 219 Cal.App.4th 466, 478-479 (2013) ("substantial motivating reason" causal nexus test applies to both discrimination and retaliation claims under FEHA); 2 Cal. Code Regs. §11009(c). "A 'substantial motivating reason' is a reason that actually contributed to the decision. It must be more than a remote or trivial reason. It does

not have to be the only reason motivating the decision." *Judicial Council of California Civil Jury Instructions* (July 2019 Ed.) (CACI), Instr. No. 2507; *see also* 2 Cal. Code Regs. §11009(e).

Here, the complaint more than adequately alleges a plausible claim of retaliation under FEHA and Section 1981. The only way Netflix can argue otherwise is to read the complaint's allegations with blinders and say that it does not say things that it does say. Netflix claims: "Plaintiff's retaliation claim fails as a matter of law because she alleges no conduct by Netflix that occurred ***after*** she complained of her initial offer." D's MPA, 5:8-10 (original emphasis). Netflix next claims: "Plaintiff does not allege that she at any time sought to reopen negotiations with Netflix, or that Netflix took any action ***at all***." D's MPA, 5:19-21 (original emphasis). Thus, according to Netflix: "Netflix's singular act of making a 'low-ball offer' cannot serve as both evidence of discrimination and evidence of retaliation for criticizing the alleged discrimination." D's MPA, 5:21-23.

In making these arguments (the only attacks it makes on the retaliation claims), Netflix just twists, distorts and reads with blinders the complaint's actual allegations. It is demonstrably wrong to state that the complaint alleges "no conduct by Netflix that occurred ***after*** [Mo'Nique] complained of her initial offer" or that Mo'Nique "does not allege that she at any time sought to reopen negotiations with Netflix, or that Netflix took any action ***at all***." D's MPA, 5:8-10 & 5:19-21 (original emphasis in both). Rather, the complaint alleges that: (1) after the initial low-ball offer, Mo'Nique (through her authorized representatives) engaged in protected activity by protesting the initial offer as discriminatory and plead with Netflix to "reconsider the 'racially and gender biased offer'" [Complaint, ¶71]; (2) Netflix "responded that it purportedly took 'very seriously' the concerns raised in the email" protesting the offer as discriminatory [*Id.* at ¶72]; (3) on January 17, 2018, Netflix had a call with Mo'Nique's representatives to address Mo'Nique's concerns and consider her request to reconsider the offer [*Id.* at ¶¶73-74]; (4) Netflix

steadfastly refused to negotiate at all and treated the low-ball offer as take-it-or-leave it [*Id*. at ¶¶73-75] – this, of course, is action by Netflix in making and acting upon the decision not to re-engage in negotiations with No'Nique after her protests; but (5) in contrast to Netflix's refusal to negotiate with Mo'Nique after she called the offer out as discriminatory, Netflix has a practice of negotiating increased monetary offers with talent even after an initial offer through continued negotiations [*Id*. at ¶75 ("…in other similar situations involving males and caucasions, Netflix has negotiated increased offers"); *Id*. at ¶¶78-80 (Netflix increased offer and re-negotiated more favorable monetary offer to comedian who did not protest or engage in protected activity after initial offer)].

      These facts expressly allege ***both*** that Mo'Nique sought to reopen negotiations by pleading Netflix to reconsider ***and*** that Netflix steadfastly refused to do so, even though in other similar situations (where the talent did not engage in legally-protected opposition) Netflix has a practice of doing so.  Moreover, these facts directly contradict Netflix's claim that the complaint alleges no retaliatory action after the protected activity.  The retaliatory action by Netflix is departing from its regular practice of negotiating in good-faith after an original offer, which in effect denied Mo'Nique of equivalent terms and conditions of potential employment.  Nothing more is needed to plead a plausible claim of retaliation.

      When Netflix denied Mo'Nique the opportunity of continued negotiations or re-negotiations after her protected activity (when it has given such continued negotiations or re-negotiations to others leading to increased offers), Netflix "fail[ed] to give equal consideration in making employment decisions" to Mo'Nique because she "opposed practices prohibited by" the FEHA.  2 Cal. Code Regs. §11021(a) ("It is unlawful for an employer … to … fail to give equal consideration in making employment decisions …, adversely affect working conditions or otherwise deny any employment benefit to an individual because that individual has opposed practices prohibited by the Act…."); *see also* 2 Cal. Code Regs. §11009(c)

("Discrimination [or retaliation] is established if a preponderance of the evidence demonstrates that an enumerated basis was a substantial motivating factor in the *denial of an employment benefit to that individual…*") (italics added). When an employer affords employees a practice or benefit (such as, here, continued negotiations to determine fair and equitable compensation) but denies the same to another employee because of protected conduct or trait, the denial of the employer's regular practice can constitute retaliation. *Kotla v. Regents of University of California*, 115 Cal.App.4th 283, 294 fn. 6 (2004) ("Evidence showing … that … the employer significantly deviated from its ordinary personnel procedures in the aggrieved employee's case, might well be relevant to support … an inference of retaliation."); 2 Cal. Code Regs. §11021(a).

The Complaint plausibly sets forth a viable theory of retaliation: Because of her protected activity, Netflix denied Mo'Nique the practice of continued good-faith negotiation and instead treated her offer as take-it-or-leave-it effectively treating her worse in the terms and conditions of employment (including compensation) than it treated others who did not engage in protected activity. These facts more than adequately state a plausible basis for the retaliation claims and there is no basis to dismiss the retaliation claims.

### III. FAILURE TO PREVENT RETALIATION (6TH CLAIM FOR RELIEF): NETFLIX'S ATTACK ON THE FAILURE TO PREVENT CLAIM IS DERIVATIVE OF ITS ATTACK ON THE FEHA RETALIATION CLAIM. THUS, THE TWO CHALLENGES RISE AND FALL TOGETHER.

Netflix challenge to the failure to prevent claim is entirely derivative of, and dependent on, its attack on the FEHA retaliation claim. D's MPA, 6:16-22. Because there is no merit to Netflix attacks on the retaliation claim, its derivative and dependent attacks on the failure to prevent claim likewise fail.

### IV. UNRUH CIVIL RIGHTS ACT (9TH CLAIM FOR RELIEF): PLAINTIFF IS ENTITLED TO PLEAD ALTERNATIVE THEORIES. THUS, THE FACT THAT IN SOME CLAIMS PLAINTIFF ALLEGES AN EMPLOYMENT RELATIONSHIP DOES NOT PROVIDE ANY BASIS TO DISMISS THE UNRUH CLAIM.

Netflix's sole challenge to the Unruh Civil Rights Act claim is that the claim (supposedly) "fails as a matter of law because the California Supreme Court has long held that the Unruh Act does not apply to alleged employment-based discrimination." D's MPA, 6:24-7:7. Here, Netflix ignores the obvious: "[A] plaintiff may plead inconsistent theories of liability, and may even argue alternative claims to a jury." *See e.g.*, *McNamara v. Picken*, 950 F. Supp.2d 125, 128-129 (D. D.C. 2013); *Hernandez v. MidPen Housing Corp.*, 2014 WL 2040144, at *6 (N.D. Cal., May 16, 2014) ("Because plaintiffs are permitted to plead conflicting theories in the alternative, the Court agrees with plaintiff. Fed.R.Civ.P. 8(a)(3) (a plaintiff must allege a "demand for relief sought, which may include relief in the alternative or different types of relief.")."); *Wi-LAN Inc. v. LG Electronics, Inc.*, S.D., 382 F.Supp.3d 1012, 1023 (S.D. Cal. 2019) ("LG may permissibly plead its alternative theories of antitrust liability"). Thus, as a pure matter of law, Netflix's sole ground challenging the Unruh claim fails.

Moreover, here, there is an important reason to plead alternative legal theories: it appears that Netflix may not concede that the relationship it offered to Mo'Nique was an employment relationship governed by the FEHA. In its moving papers, Netflix qualifies its acceptance of the FEHA-employment pleading allegations by stating: "Defendant assumes, but only for purposes of this motion, that Plaintiff was an employee or perspective (*sic*) employee entitled to FEHA's protections …." D's MPA, 4: 27-28 at fn. 3. In anticipation of Netflix's claim that the relationship it proposed was not governed by the FEHA, Plaintiff alternatively alleged the Unruh claim in the event that Netflix were to prevail on its argument. Indeed, the Complaint expressly alleges that this claim is an alternative theory by

stating "Plaintiff contends that she was made an offer of 'employment' within the meaning of the California Fair Employment & Housing Act," but "to the extent that it is determined that the offer was not one of 'employment' within the meaning of the California Fair Employment & Housing Act, then alternatively Plaintiff alleges that she was seeking to avail herself of the provision of facilities, privileges, services, etc. supplied by Defendants in order to stream online content." Complaint, ¶174. There is no basis to dismiss this alternatively plead theory.

## V. PLAINTIFF REQUESTS LEAVE TO AMEND IF ANY CLAIM IS DISMISSED BY THIS MOTION.

To the extent that the Court grants any aspect of this motion, Plaintiff requests leave to amend to cure any alleged deficiency in the pleading.

DATED: February 7, 2020

**The deRubertis Law Firm, APC**
**Schimmel & Parks, APLC**

By: /s/ David M. deRubertis
David M. deRubertis
Michael W. Parks
Attorneys for Plaintiffs