LUCIA E. COYOCA (SBN 128314)
　lec@msk.com
EMMA LUEVANO (SBN 198421)
　eyl@msk.com
LOUISE TRUONG (SBN 293811)
　ltt@msk.com
**MITCHELL SILBERBERG & KNUPP LLP**
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendant
NETFLIX, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE HICKS, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NETFLIX, INC., a Delaware corporation; and DOES 1 through 50, inclusive<br><br>　　　　Defendants. | CASE NO. 2:19-cv-10452-AB-MAA<br><br>The Honorable André Birotte Jr.<br>Courtroom: 7B<br><br>**DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Time:　February 28, 2020<br>Date:　10:00 a.m.<br>Place:　Courtroom 7B<br><br>(Removed from LASC Case No. 19STCV40934) |

Mitchell
Silberberg &
Knupp LLP

11880068.7

1

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..............................................................................................1

II. THE COURT SHOULD GRANT NETFLIX'S MOTION TO DISMISS.....2

    A. Plaintiff's Own Allegations Undermine Her Claim of Retaliation ......2

    B. Netflix Withdraws Its Motion to Dismiss Plaintiff's Ninth Claim for Relief .................................................................................................5

    C. Plaintiff Should Not Be Granted Leave to Amend ...............................5

III. CONCLUSION .................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Akers v. County of San Diego*,
  95 Cal. App. 4th 1441 (2002) ............................................................................ 4

*Brown v. Contra Costa Cty.*,
  No. C 12-1923 PJH, 2014 WL 1347680 (N.D. Cal. Apr. 3, 2014) ..................... 2

*Denton v. Hernandez*,
  504 U.S. 25 (1992) ............................................................................................ 3

*Flores v. First Hawaiian Bank.*,
  No. 1:11-CV-00022, 2012 WL 2550593 (D. N. Mar. I., Feb. 15, 2012) ............ 3

*Fuchs v. Hood Industries, Inc.*,
  471 F. Supp. 186 (D. Mass. 1979) ..................................................................... 2

*In re GeoPharma, Inc. Sec. Litig.*,
  411 F. Supp. 2d (S.D.N.Y., Jan. 27, 2006) ........................................................ 3

*Ketab Corp. v. Mesriani & Assocs., P.C.*,
  734 F. App'x 401 (9th Cir. 2018) ....................................................................... 5

*Marting v. Crawford & Co.*,
  203 F. Supp. 2d 958 (N.D. ll. 2002) .................................................................. 5

*McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*,
  780 F.3d 582 (4th Cir. 2015) ............................................................................. 3

*Probst v. Ashcroft*,
  25 F. App'x 469 (7th Cir. 2001) ........................................................................ 4

*Yanowitz v. L'Oreal USA, Inc.*,
  36 Cal. 4th 1028 (2005) ............................................................................ 1, 2, 4

**STATUTES**

42 U.S.C. § 1981 ....................................................................................................... 2

Unruh Civil Rights Act ............................................................................................. 5

Mitchell Silberberg & Knupp LLP

11880068.7

ii

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**OTHER AUTHORITIES**

Rule 11 .................................................................................................................... 1

Rule 12(b)(6) ........................................................................................................... 1

## I.  INTRODUCTION

Plaintiff Monique Hicks's ("Plaintiff") Opposition lays bare that her retaliation claims are based entirely on her specious argument that Netflix failed to *reinitiate* negotiations with her after she raised concerns about her allegedly "low-ball" offer.  Plaintiff does not deny that she never responded to Netflix's original offer with a counteroffer, but instead took to Instagram and daytime talk shows in an effort to organize a boycott against Netflix.  Plaintiff does not deny that she and Netflix engaged in detailed discussions about her offer after she first complained.  And she does not deny that Netflix's original offer for $500,000 remained open even after her alleged protected activity. Plaintiff thus not only fails to plead facts showing retaliation, but the facts she pleads are *inconsistent* with a claim for retaliation.  Plaintiff's Fifth, Sixth (as it relates to retaliation) and Eighth claims for relief must therefore be dismissed with prejudice.

Even if Plaintiff could allege that she suffered some sort of retaliation (and she, consistent with her Rule 11 obligations, cannot), her retaliation claims would still fail because she cannot cure a fundamental defect identified in Netflix's Motion: Plaintiff has failed to allege any causal link between her alleged protected activity and some "adverse employment action."  As the California Supreme Court made clear in *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1051-55 (2005), to constitute an adverse action, the terms and conditions of employment must have been materially affected.  Plaintiff's Complaint makes clear that even after she complained, her position did not change – she still had a $500,000 contract offer from Netflix.  The ball remained in Plaintiff's court to either accept the offer or make a counteroffer.  Netflix's decision to stand behind its original offer and not negotiate against itself is not, as a matter of law, an adverse action.[1]

---

[1] Although, for purposes of this Motion, Rule 12(b)(6) requires Netflix to accept as true the facts as alleged by Plaintiff, Netflix does not concede that Plaintiff would have been an employee of Netflix (or any of its affiliated entities), even if the parties had been able to come to an agreement on her one-hour comedy special.

Mitchell Silberberg & Knupp LLP

11880068.7

1

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Netflix therefore respectfully requests that the Court grant Netflix's Motion to Dismiss her Fifth, Sixth (as it relates to retaliation only) and Eighth Claims with prejudice because Plaintiff is unable to establish that Netflix retaliated against Plaintiff, and any amendment to attempt to state such a claim would be futile.

## II. THE COURT SHOULD GRANT NETFLIX'S MOTION TO DISMISS

### A. Plaintiff's Own Allegations Undermine Her Claim of Retaliation

Plaintiff failed to allege a causal connection between her alleged protected activity and an adverse action, as the law requires.[2] (*See* Motion to Dismiss ("Mot.") at 4:18-23.) In her Opposition, Plaintiff casts about in search of an adverse action that followed her discussions with Netflix and her call for a public boycott on Instagram, but comes up empty. As a result, Plaintiff is forced to rely on its vague allegations that Netflix refused ***to negotiate against itself*** and make a more generous offer to her. (Plaintiff's Opposition to Motion to Dismiss ("Opp.") at 8:21-9:2.) These vague allegations cannot save Plaintiff's claims for at least two reasons.

*First*, Plaintiff concedes in her Complaint that Netflix ***did*** attempt to negotiate with Plaintiff, even after she complained. Plaintiff admits that after she complained, Netflix's representatives spoke with Plaintiff's representatives, discussed another comedian's deal, discussed the methodology Netflix had utilized to calculate its offer, and asked that Plaintiff reconsider the offer. (Complaint, ¶¶ 73-75.) While that may not have been the result Plaintiff was seeking, it clearly was an effort by Netflix to close a deal. *See Fuchs v. Hood Industries, Inc.,* 471 F. Supp. 186, 191-92 (D. Mass. 1979) (holding that the "***petitioner has confused negotiation with capitulation***" and that the respondents did engage in negotiations

---

[2] To establish a prima face of retaliation, plaintiff must show that the employer subjected the employee to an adverse employment action. *See Yanowitz,* 36 Cal.4th at 1042 (applying FEHA); *Brown v. Contra Costa Cty.,* No. C 12-1923 PJH, 2014 WL 1347680, at *6 (N.D. Cal. Apr. 3, 2014) (applying 42 U.S.C. section 1981).

because the petitioner "was notified of the contemplated act, was afforded an opportunity to be heard and indeed, was heard") (*emphasis added*).

Plaintiff's argument is further wrecked on the shoals of common sense. Though Plaintiff appears to concede that she never made a counteroffer to Netflix's opening offer (and does not plead otherwise), she nevertheless insists that Netflix was obligated to ***bargain against itself*** and make another, more generous offer, and that its failure to do so constitutes retaliation. Such an argument defies logic and cannot save Plaintiff's retaliation claims from dismissal. *See Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992) (a court may dismiss a claim as factually frivolous when the "facts alleged rise to the level of the irrational or wholly incredible"); *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d, 434, 446, n. 83 (S.D.N.Y., Jan. 27, 2006) ("Courts often refuse to infer scienter, even on a recklessness theory, when confronted with illogical allegations"); *Flores v. First Hawaiian Bank.,* No. 1:11-CV-00022, 2012 WL 2550593 at *10 (D. N. Mar. I., Feb. 15, 2012) (dismissing a claim because plaintiff's allegation "defie[d] common sense.")

Plaintiff's efforts to compare her own Netflix negotiations with those of Wanda Sykes does not help her cause. (Opp. at 9:8-10.) Plaintiff claims that Wanda Sykes publicly criticized Netflix, stating that she was "'offended' at Netflix's 'low-ball[]' offer," but despite publically protesting Netflix's offer, Netflix continued to negotiate with Sykes and ultimately reached a deal. (Complaint, ¶¶ 79, 80). Far from evidencing retaliatory animus, Plaintiff's allegations about Sykes demonstrate that, in both instances, Netflix continued negotiations after they complained.[3] Unlike Plaintiff, however, who never even

---

[3] Netflix's negotiations with Sykes are unhelpful to Plaintiff for an additional reason: Plaintiff has not pled that Netflix approached Sykes to reopen negotiations after her public comments, as opposed to Sykes initiating further negotiations with Netflix. As a result, the Court is left to speculate concerning whether Netflix's negotiations with Sykes were the same or different than Plaintiff's. *McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.,* 780 F.3d 582, 586

Mitchell Silberberg & Knupp LLP

11880068.7

3

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

made a counteroffer (*see* Complaint, ¶¶ 73-76), Sykes was ultimately able to make a deal.

*Second*, even if Netflix did fail to further negotiate with Plaintiff—which directly contradicts Plaintiff's own allegations—this does not cure the Complaint's deficiencies as Plaintiff does not plead and cannot prove a causal connection between her email to Netflix (Complaint, ¶ 71), or her call for a boycott (*id.*, ¶ 76), and an **adverse action**. To constitute "an adverse employment action," Netflix's alleged failure to negotiate against itself and sweeten its original offer must "materially affect the terms, conditions, or privileges of employment." *Yanowitz*, 36 Cal. 4th at 1051-55. "Retaliation must result in a **substantial adverse change** in the terms and conditions of the plaintiff's employment." *Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1455 (2002) (*emphasis added*).

Netflix's failure to negotiate against itself could not affect any change to Plaintiff's terms and conditions of employment, let alone a substantial change. Plaintiff alleges that she had an offer of $500,000 prior to her complaint to Netflix. (Complaint, ¶ 64.) And, she alleges that after she complained, she continued to have an offer of $500,000. (Complaint, ¶ 75.) There was no change in the terms of her offer, and thus, no adverse action. *See Akers,* 95 Cal.4th at 1455; *Yanowitz,* 36 Cal. 4th at 1051-55.

Furthermore, Plaintiff can only speculate that the terms and conditions of her employment with Netflix would have improved if Netflix negotiated against itself. Because Plaintiff failed to make a counteroffer, she can only guess whether if she had done so, Netflix would have held firm on its opening offer, or whether she and Netflix would have ever reached an agreement on other material terms. This defect is fatal to her claim. *See Probst v. Ashcroft*, 25 F. App'x 469, 472 (7th Cir.

---

(4th Cir. 2015) (affirming dismissal of Plaintiff's race claim because, "only speculation [could] fill the gaps in her complaint").

2001) ("Hypothetical possibilities are not materially adverse employment actions").

Finally, Plaintiff argues that Netflix's continued refusal to negotiate against itself supports both a discrimination and retaliation claim. Plaintiff's pleadings, however, reflect only one alleged harm—that Netflix was motivated by discriminatory animus when it made a "take-it or leave-it" offer of $500,000 and refused to negotiate with her. (Complaint, ¶¶ 75, 90.) Plaintiff cannot rely on the same purported adverse action to support her retaliation claims. Netflix's singular act of not increasing its initial offer cannot support both a claim for discrimination and retaliation. *See Marting v. Crawford & Co.,* 203 F. Supp. 2d 958, 971 (N.D. ll. 2002) ("Plaintiff cannot argue that the conduct of which she complains was motivated by gender bias under one theory, then claim the same conduct was in retaliation for her complaints").

Plaintiff's own allegations establish that Netflix continued to negotiate with Plaintiff and that its refusal to negotiate against itself does not, as a matter of law, constitute adverse action. The Court should therefore grant Netflix's Motion to Dismiss her Fifth, Sixth (as it relates to retaliation only) and Eighth Claims.

### B. Netflix Withdraws Its Motion to Dismiss Plaintiff's Ninth Claim for Relief

At this time, Netflix withdraws its Motion to dismiss Plaintiff's Ninth Claim that Netflix violated the Unruh Civil Rights Act ("UCRA") based on Plaintiff's representation that it has been pled in the alternative to her employment claims.[4]

### C. Plaintiff Should Not Be Granted Leave to Amend

Plaintiff's Fifth, Sixth (as it relates to retaliation only) and Eighth Claims should be dismissed with prejudice. Contrary to Plaintiff's conclusory arguments, it is clear that the deficiencies discussed above cannot be saved by amendment.

---

[4] Netflix reserves its right to argue that the UCRA is inapplicable to Plaintiff's allegations against Netflix.

*See Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 406 (9th Cir. 2018) ("[L]eave to amend is usually freely given unless it is clear that the complaint could not be saved by amendment") (affirming denial of leave to amend claims).  There are no additional facts that Plaintiff can proffer that will change the reality that Plaintiff's own allegations show that Netflix did not retaliate against her.  Leave to amend would be futile and should not be granted.

### III. CONCLUSION

For the foregoing reasons, Netflix respectfully requests that the Court dismiss Plaintiff's Fifth, Sixth (as to failure to prevent retaliation), and Eighth Claims for Relief *with prejudice.*

DATED: February 14, 2020

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP
LUCIA E. COYOCA
EMMA LUEVANO
LOUISE TRUONG

By: /s/ Lucia E. Coyoca
    Lucia E. Coyoca (SBN 128314)
    Attorneys for Defendant
    NETFLIX INC